UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 07-166 (JNE/AJB)

| | |
|---|---|
| UNITED STATES OF AMERCIA, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>Leidy Rivera-Hernandez, )<br>)<br>  Defendant. )<br>_____ ) | DEFENDANT'S MOTION<br>FOR DEPARTURE |

The Defendant respectfully moves the Court for a Guidelines departure pursuant to Sec. 5H1.6 based upon the fact that the loss of caretaking and family support will cause extraordinary and substantial harm to the Defendant's children.

This motion is made on all the files and records in the case, the Defendant's sentencing memorandum, the interests of justice and upon such other and further evidence and argument as may subsequently be presented to the Court.

Dated: June 9, 2009

Respectfully Submitted

 s/ Michael McGlennen
Michael McGlennen
Attorney ID No.: 70439
Attorney for Defendant
286 Commerce at the Crossings
250 Second Avenue South
Minneapolis, MN 55401
(612) 335-8877

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 07-166 (JNE/AJB)

| | |
|---|---|
| United States of America, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>Leidy Rivera-Hernandez, )<br>)<br>        Defendant. )<br>_____ ) | DEFENDANT'S MEMORANDUM<br>OF LAW AND REQUEST FOR<br>SENTENCING |

Ms. Rivera-Hernandez is in need of rehabilitation, her children are in need of her. The Court, in determining whether a term of imprisonment is to be imposed, is required by statute to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." (18 U.S.C. § 3553(a)(1) and to "recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. 3582(a).

In that regard, Ms. Hernandez has filed a motion for a guidelines departure based on the extraordinary effect that separation will have on her children and a motion for downward variance for the same reason (and others) recognizing that as a consequence of 18 U.S.C. 3553(a) a defendant's family obligations (and characteristics) can form the basis for a variance even though they would not justify a departure, <u>United States v. Chase</u> (8th Circuit March 25, 2009)  In other words, her circumstances, though extraordinary, need not be extraordinary to allow a court to vary downward when determining the least sentence meeting § 3553(a) requirements.

1

NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Rivera-Hernandez's plea and Mr. Smith's recitation of the facts inform the Court of the circumstances of the offense. Ms. MacDonald's anticipated Rule 5k motion reflecting Ms. Rivera-Hernandez's assistance will no doubt include the circumstances and our own discussion of her characteristics will, it is hoped, flesh that out.

HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Ms. Hernandez was born in La Rumana in the Dominican Republic in Central America in 1973.  Many poor peoples from Caribbean nations are marred by the institution of slavery and the perverse legacy of the genocide of indigenous peoples.  As a result, poor women from the Dominican Republic like Ms. Hernandez, with Indigenous and African heritage, are in the precarious position of being viewed as libidinous, dirty, disposable, and mandatorily subservient.  This is a legacy that does not erase with the turning over of generations; inter-generational trauma is real.

When Ms. Hernandez was very young, her father instilled in her that she had "no say in life," and "no right to live."   Leidy was taught not to think for herself but to comply with her father's demands imposed with threats. Beaten with an electrical cord (as a 5 – 6- 7year old) left her with scars on her body but also, as she puts it, "scars on her soul."  Not even her grandmother, who lived in the house trusted her or valued her as a person.  Abuse towards children is a way of "teaching," and this in turn sets a pattern that recurs again and again. Thus, her grandmother tolerated the parental terror and reinforced it and turned her back when Leidy pleaded for protection.  At age eight, her grandmother took in a boarder to help make ends meet.  The man had rough hands from working in the

fields, strong arms from grinding rice. He raped her violently, but when she complained she was beaten into acceptance so as not to upset the family's finances.

Leidy had no childhood in any real sense.  If she would have, she would know what it is to live in a secure household, to have nuclear and extended family members look out for her and care for her.  None of this happened for Leidy. Her remembrances include watching her father beat her cancer ridden mother until his arms grew tired.   Yet, she managed, and even though she ran away many times, she finished the ninth grade and at 14 or 15 when her father was exiled after having killed a man whose family swore vengeance, she got a job.

Ms Hernandez's job was sewing pants in an American owned sweat shop arriving at 6:00 a.m. and working in oppressive heat until midnight for 5 pesos an hour, 7 pesos for overtime or about $10.00 per week.  It was there that she met her first boyfriend. At first, he made her feel important, but it was only to be able to "conquer" her. Leidy fell for his kindness. She wanted to feel important and to be close to someone who valued her. Later, she would find out that he was already married with children, and by that time she was pregnant. Scared and with the advice of another woman friend who warned her: "it isn't right to have that baby". Leidy went to the clinic to have an abortion. Now, Leidy was seen as a stained woman. Nonetheless, two to three months later the boyfriend convinced her to come back to him. He, like her family, continually told her she was trash and worthless, it became an easy trap to fall back into. But for some reason Leidy's hopes remained alive, her spirit remained unbroken.

Although, Leidy Rivera's (legal) troubles stem from a long history of physical, sexual, verbal, and psychological abuse, ironically however, they also originate from her

overwhelming dedication to her children, her often compromised role as a mother, and her lifelong search to be treated with affection, love, and respect. Leidy's main struggles derived from something she could not help: her gender. Because of a long history of colonization, paternalism, Christianization, and patriarchy, the Dominican Republic and other Caribbean countries have normalized misogyny, where the way of teaching and raising children is often one of abuse, especially toward young girls.  Boys are also taught unhealthy patterns at a young age. While it is completely acceptable for men to have a family while having two or three mistresses on the side and bastard children on the street, a woman would be killed by her husband if she did the same.

Leidy Rivera's life of abuse and neglect served the purposes of patriarchy. Throughout her life, she has been dehumanized and hyper-sexualized by people very close to her, family members, who have maintained control over her and have led Leidy to make some very hard choices in order to survive. The abuse she's endured and the choices she's made have become a sort of her inheritance which has narrowed the perception she has of herself as well as the opportunities available to her. Nevertheless, something in her demanded escape.

Seeing no future on the island, she saved what money she could, even stealing and pawning her mother's TV she booked passage with the many human cargo boats available for hire. She made nine attempts.  Eight of those trips returned to the island because of weather or police or simply the captain's lies which landed them back on the same island from which they left. The ninth time, at 18, Leidy made it out to sea.  A hurricane blew the boat off course.  At sea for eight days, she thought she was going to die. Tossed by the seas, dehydrated and starving, salt eating her skin, and once again

pregnant, finally, land was sited. Afoot, on an island which the passengers later learned was Puerto Rico, they hid from the coast guard in the mountains fighting hunger and biting ants until through the generosity of some people who found them and others who fed them and opened their doors for her, she had her baby, Francisco.

This family, however, turned out to have another abusive head of household. The father was abusive and assaultive.. Leidy tried to leave, but the man wouldn't let her go out of the house. Finally, an attempt to get out succeeded; the woman who opened her doors to her, found Leidy a safe place to stay with her baby. And, after some time, Leidy met a man who she thought would be a good partner and father. They moved in together, but afterward, with the threat of deportation, he would not let her out alone anywhere. For two years, she remained his captive, receiving the usual beatings and degradation. Leidy was, however, crafty enough to begin the process of immigration papers, but not without consequences. Once, when her husband found out, he burned the papers and beat her. He fractured her nose, and left her severely bruised. She doubted that when he put a gun to her head and threatened to kill that anyone would care.

Clearly, Leidy paints a picture of the viscous cycle of abusive and domineering men that controlled her life. She tells how very scared she was when he brought the gun home and how she felt she had to go on the run from him. She ran and kept moving, but all the while had no money, had few belongings, and had no steady job. Her children now three in number were in need as well.

This is when a friend told her of a "job" which made everything sound okay. This friend told her to "think about it"; how good that must have felt to be asked to think, make a decision and be told you'd be successful at something. Leidy made the choice and

5

said yes. She was given a phone number, and then through the contact was given a plane ticket for the United States, leaving her children (at least for the first two months) behind. It was very difficult for her in Minneapolis, a new place where she knew nobody and was alone. She got sick often. But, her children finally joined her on December 26, 2006. Her employment, her "job", was working as a prostitute. Yet, she was with her children and probably as happy as she had ever been in her life.

EPILOGUE

Ms. Hernandez's job lasted less than a year. On May 27, 2007 she appeared before a federal magistrate on a superseding indictment charged with promoting prostitution and human trafficking. On August 23, 2007 she pleaded guilty to the prostitution charge. Since then she has reported to pretrial services awaiting sentence for nearly two years.

Francisco is 15, has trouble with his weight and glucose, but is otherwise an engaging, mature, bright, bilingual young man whose pants do not sag, and who wants to be a lawyer.

Javier will enter 7th grade, is 13 and on medication for diagnosed ADHD/ADD but stays focused and manages his daily routine.

Ernesto, in the 4th grade and 9, is a bright well mannered grade school kid.

Ms. Hernandez, even though under the cloud of federal charges has maintained equilibrium. A major hurdle came when her boss at work at one of her early jobs told her that he liked her and wanted to help. He owned several trailer homes in predominantly Latino areas and offered her living space in Burnsville. It meant leaving the programs and largess of Hennepin County, but, seeing it as a way to independence, she agreed. The

arrangement was not without benefits for him (Daniel Juarez, by name.) He occasionally stayed with her, until she learned he was married with children.

It turns out; he had other motives as well. A year ago, Mr. Juarez was murdered at a similar trailer park in Chaska, seemingly after a drug transaction gone bad. And, as Leidy later discovered when a plumber crawled under the house for some repair, he was probably using the place as a stash house for illicit drugs. She immediately called the police and told them everything she knew. There have been no men in her life since. She spends her day earning her rent by collaborating with a neighbor lady cooking and taking hot lunches (Mexican cuisine) to the numerous construction sites hiring Mexican labor. She counts her pennies carefully and with the help of food stamps makes ends meet. One advantage of Mr. Juarez's death was that the trailer home, debt free, was left in her name. She has fixed it up considerably. Moved the bath, new tiling and sheet rock, she is a handy and skilled worker.

She wants to keep her home and be with her children. She is their lifeline. She has no family here and is their sole caregiver. Any sentence the court imposes she knows she deserves, but prays it will not take her from her children. She has travelled a long way to bring them freedom.

Dated: June 9, 2009                                         Respectfully Submitted

                                                             s/ Michael McGlennen
                                                            Michael McGlennen
                                                            Attorney ID No.: 70439
                                                            Attorney for Defendant
                                                            286 Commerce at the Crossings
                                                            250 Second Avenue South
                                                            Minneapolis, MN 55401
                                                            (612) 335-8877

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 07-166 (JNE/AJB)

| | |
|---|---|
| UNITED STATES OF AMERCIA, )<br>  )<br>           Plaintiff, )<br>  )<br>  v. )<br>  )<br>Leidy Rivera-Hernandez, )<br>  )<br>           Defendant. )<br>_____ ) | CERTIFICATE OF SERVICE |

I hereby certify that on June 9, 2009, I caused the following documents:

     1. Defendant's Motion For a Variance,
     2. Defendant's Motion For Departure, and
     3. Memorandum of Law and Request For Sentencing

To be electronically filed with the Clerk of Court for the United States District Court for the District of Minnesota by using the CM/ECF system.  Participants in the case are registered CM/ECF users and are served by the CM/ECF system.


                                       /s/ Michael McGlennen
                                       Michael McGlennen, Reg. #70439
                                       286 Commerce at the Crossings
                                       250 Second Avenue South
                                       Minneapolis, MN 55401
                                       (612) 335-8877
                                       Attorney for the Petitioner